VOL 3298 PAGE 303

Agreement made this **3** day of **JANUARY** , 19 3, between **WINDSONG MUSIC** (hereinafter called the "Publisher") and **DONALD M. Smith + Cyril UEHER** jointly and/or severally (hereinafter called "Writer(s)"):

## Witnesseth:

In consideration of the agreement herein contained and of the sum of One (1.00) Dollar and other good and valuable consideration in hand paid by the Publisher to the Writer(s), receipt of which is hereby acknowledged, the parties agree as follows:

1. The Writer(s) hereby sells, assigns, transfers and delivers to the Publisher, its successors and assigns, a certain heretofore unpublished original musical composition, written and/or composed by the above named writer(s), now entitled:

**"Double SHOT (of my BABYS LOVE)"**

including the title, words and music, and all copyrights thereof, including but not limited to the copyright registration thereof No. , and all rights, claims and demands in any way relating thereto, and the exclusive right to secure copyright therein throughout the entire world, and to have and to hold the said copyrights and all rights of whatsoever nature now and hereafter thereunder existing and/or existing under any agreements or licenses relating thereto, for and during the full terms of all of said copyrights. In consideration of the agreement herein contained and the additional sum of One ($1.00) Dollar and other good and valuable consideration in hand paid by the Publisher to the Writer(s), receipt of which is hereby acknowledged, the Writer(s) hereby sells, assigns, transfers and delivers to the Publisher, its successors and assigns, all renewals and extensions of the copyrights of said musical composition(s) to which the Writer(s) may be entitled hereafter, and all registrations thereof, and all rights of any and every nature now and hereafter thereunder existing, for the full terms of all such renewals and extensions of copyrights.

2. The Writer(s) hereby warrants that the said composition is his sole, exclusive and original work, and that he has full right and power to make the within agreement, and that there exist no adverse claims to or in the said composition. The Writer(s) hereby further warrants and represents that he is not a member of the American Society of Composers, Authors and Publishers, the Songwriters' Protective Association, or of any other society or association which require as a condition of membership the assignment of any right of any kind in said musical work and that no assignment of any of the rights herein set forth has been directly or indirectly made to Broadcast Music, Inc. or any other person, firm or corporation whatsoever.

3. The Writer(s) hereby warrant(s) that the foregoing musical composition is new and original and does not infringe any other copyrighted work and has been created by the joint collaboration of the Writers named herein and that said composition, including the title, words and music thereof, has been, unless herein otherwise specifically noted, the result of the joint efforts of all the undersigned Writers and not by way of any independent or separable activity by any of the Writers.

4. In consideration of this agreement, the Publisher agrees to pay the Writer(s) as follows:

(a) In respect of regular piano copies sold and paid for at wholesale in the United States of America, royalties of cents per copy;

(b) A royalty of **4 ¢** cents per copy of dance orchestrations thereof sold and paid for in the United States of America;

(c) A royalty of **4 ¢** per cent of all net earned sums received by the Publisher in respect of regular piano copies and/or orchestrations thereof sold and paid for in any foreign country by a foreign publisher.

(d) The sum of One Dollar as and when the said composition is published in any folio or composite work or lyric magazine by the Publisher or licensee of the Publisher. Such publication may be made at any time in the discretion of the Publisher;

(e) In respect of copies sold and rights licensed or sold in the Dominion of Canada, the royalties to be paid to the Writer(s) shall be on the same royalty basis as herein provided for sales or licenses in the United States.

(f) As to "professional material"— Not sold or resold, no royalty shall be payable;

(g) An amount equal to **50%** per cent of all net earned proceeds received and actually retained by the Publisher arising out of (1) the manufacture of phonograph records and other parts of instruments serving to mechanically reproduce said composition, or (2) the use of said composition in synchronization with sound motion pictures;

(h) Except as herein expressly provided, no other royalties shall be paid with respect to the said composition.

(i) Notwithstanding anything contained in this agreement, the Publisher shall deduct ten percent of all net receipts from all licenses issued by it to licensees in the United States and elsewhere, as collection charges for the collection of the proceeds of such licenses, before computing the royalties payable under paragraph 4 of this agreement.

6. It is understood and agreed by and between all the parties hereto that all sums hereunder payable jointly to the Writer(s) shall be paid to and divided amongst them respectively as follows:

| NAME | SHARE |
|------|-------|
| DONALD M. SMITH | 50% |
| CYRIL VETTER | 50% |

VOL 3298 PAGE 304

7. The Publisher shall render the Writer(s), as above, on or before each August 15th covering the six months ending June 30th, and each February 15th covering the six months ending December 31st, royalty statements accompanied by remittances for any royalties then thereunder.

8. Anything to the contrary notwithstanding, nothing in this agreement contained shall obligate the Publisher to print copies of said composition in staff and nothing herein contained shall prevent the Publisher from authorizing publishers, agents and representatives in countries outside of the United States from exercising exclusive publication and all other rights in said foreign countries in said composition on the customary royalty basis; and nothing in this agreement shall prevent the Publisher from authorizing publishers in the United States from exercising exclusive publication rights and other rights in the United States in said composition, provided the Publisher shall pay the Writer(s) the royalties herein stipulated.

9. The Writer(s) may appoint a certified public accountant who shall, upon written request therefor, have access to all records of the Publisher during business hours relating to said composition for the purpose of verifying royalty statements hereunder.

10. The Writer(s) hereby consent to such changes, adaptations, dramatizations, transpositions, editing and arrangements of said composition, and the setting of words to the music and of music to the words, and the change of title as the Publisher deems desirable. The Writer(s) hereby waive any and all claims which they have or may have against the Publisher and/or its associated, affiliated and subsidiary corporations by reason of the fact that the title of said composition may be the same or similar to that of any musical composition or compositions heretofore or hereafter acquired by the Publisher and/or its associated, affiliated and subsidiary corporations. The Writer(s) consents to the use of his (their) name and likeness and the title to the said composition on the music, folios, recordings, performances, player rolls and in connection with publicity and advertising concerning the Publisher, its successors, assigns and licensees, and said composition, and agrees that the use of such name, likeness and title may commence prior to publication and may continue as long as the Publisher shall own and/or exercise any rights in said composition.

11. Written demands and notices other than royalty statements provided for herein shall be sent by registered mail.

12. Any legal action brought by the Publisher against any alleged infringer of said composition shall be initiated and prosecuted at the Publisher's sole expense, and of any recovery made by it as a result thereof, after deduction of the expense of the litigation, a sum equal to thirty-three and one-third (33-1/3) per cent shall be paid to the Writer(s).

(a) If a claim is presented against the Publisher in respect of said composition, and because thereof the Publisher is jeopardized, it shall thereupon serve written notice upon the Writer(s), containing the full details of such claim known to the Publisher and thereafter until the claim has been adjudicated or settled shall hold any moneys coming due the Writer(s) in escrow pending the outcome of such claim or claims. The Publisher shall have the right to settle or otherwise dispose of such claim in any manner as it in its sole discretion may determine. In the event of any recovery against the Publisher, either by way of judgment or settlement, all of the costs, charges, disbursements, attorney fees and the amount of the judgment or settlement, may be deducted by the Publisher from any and all royalties or other payments therefor or thereafter payable to the Writer(s) by the Publisher or by its associated, affiliated, or subsidiary corporations.

(b) From and after the service of summons in a suit for infringement filed against the Publisher with respect to said composition, any and all payments thereafter coming due the Writer(s) shall be held by the Publisher in trust until the suit has been adjudicated and then be disbursed accordingly, unless the Writer(s) shall elect to file an acceptable bond in the sum of payments, in which event the same due shall be paid to the Writer(s).

12. "Writer" as used herein shall be deemed to include all authors and composers signing this agreement.

13. The Writer(s), each for himself, hereby irrevocably constitute and appoint the Publisher or any of its officers, directors, or general manager, his (their) attorney and representative, in the name(s) of the Writer(s), or any of them, or in the name of the Publisher, its successors and assigns, to make, sign, execute, acknowledge and deliver any and all instruments which may be desirable or necessary in order to vest in the Publisher, its successors and assigns, any of the rights hereinabove referred to.

14. The Publisher shall have the right to sell, assign, transfer, license or otherwise dispose of any of its rights in whole or in part under this agreement to any person, firm or corporation, but said disposition shall not affect the right of the Writer(s) to the royalties hereinabove set forth.

15. Publisher may grant mechanical licenses to Herald Music Corp., or its affiliates, for phonograph records or the reproduction of recordings at per record for each record manufactured, sold and for which payment is received.

16. This agreement shall be construed only under the laws of the State of New York. If any part of this agreement shall be invalid or unenforceable, it shall not affect the validity of the balance of this agreement.

17. This agreement shall be binding upon and shall inure to the benefit of the respective parties hereto, their respective successors in interest, legal representatives and assigns, and represents the entire understanding between the parties.

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals the day and year first above written.



Writer _Donald M. Smith_

Address _1852 Pocahontas St., Baton Rouge, La._

Writer _Cyril E. Vetter_

Address _593 Castillo Lane, Baton Rouge, La._

Writer _____

Address _____

PLEASE SHOW PERMANENT MAILING ADDRESS ➡