UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **CYRIL VETTER** *and* **VETTER COMMUNICATIONS CORP** | CIVIL ACTION: 3:23-cv-1369 |
| | Chief Judge Shelly D. Dick |
| **VERSUS** | |
| | Magistrate Erin Wilder-Doomes |
| **ROBERT RESNIK** *individually and d/b/a* **RESNIK MUSIC GROUP** | |

**DEFENDANTS' REPLY BRIEF TO PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

**NOW INTO COURT**, come Defendants, Robert Resnik *individually* and *d/b/a* Resnik Music Group, who respectfully submit that Plaintiffs owe this Honorable Court an apology. Their vastly oversized Opposition to Defendant's Motion to Dismiss ("Pl. Opp.") fails to cite a single *relevant* precedent in support of Plaintiffs' novel theory of international copyright relations. There are no such precedents, because Plaintiffs theory is flatly wrong in every respect. The issue presented is very simple, it is dictated by the plain language of the Copyright Act, and has been answered directly and consistently by every Court that has considered it. As the Court clearly stated in *Siegel v. Warner Bros. Entertainment, Inc.,* 542 F.Supp.2d 1098, 1140 (C.D. Cal. 2008),[1] "the statutory text could not be any clearer on this subject":

> Through this section [304(c)(6)(E)], Congress expressly limited the reach of what was *gained* by the terminating party through exercise of the termination right; specifically, the terminating party only recaptured the *domestic* rights (that is, the rights arising under title 17 to the United States Code) of the grant to the

---

[1] *Rev'd in part on other grounds sub nom. Larson v. Warner Bros. Entertainment, Inc.,* 504 Fed. Appx. 586 (9th Cir. 2013),

>copyright in question. Left expressly intact and undisturbed were any of the rights the original grantee or its successors in interest had gained over the years from the copyright through other sources of law, notably the right to exploit the work abroad that would be governed by the copyright laws of foreign nations. Thus, the statute explains that termination "in no way affects rights" the grantee or its successors gained "under foreign laws."

*Siegel* at 1140 (emphasis original).

With all of Plaintiffs' irrelevant excursions into the history of termination rights (Pl. Opp. 14-15), patent and trademark law (*id.* 10-11) and cases having nothing to do with transfers of ownership (*Itar-Tass Russian News v. Russian Kurier,* 153 F.3d 82 (2d Cir. 1998) and *Kirtsaeng v. John Wiley & Sons, Inc.,* 568 U.S. 519 (2013), discussed below), they do not and cannot cite a single case that actually reaches the result they demand of the Court here.

Plaintiffs' Opposition admits that they assert "a novel theory" (Pl. Opp. at 6), that "there is no such thing as an international copyright" (*id.*), that "the Berne convention is not considered self-executing" (*id.* at 7) and that "domestic laws" are required to "implement and comply with the Berne Convention's requirements." (*Id.*). But somehow Plaintiffs would have this Honorable Court believe that "domestic law" is actually global, such that the worldwide copyright of a U.S. work is determined by U.S. law. See Pl. Opp. at 11 (discussion of "national treatment").

Plaintiffs cannot come out and say so, but in essence they argue that the copyright of a work in France does not really "arise under" French law, but is merely "recognized" by French law, without ever explaining exactly what the difference is.[2] Plaintiffs are merely playing with words when they attempt to distinguish between where a copyright

---

[2] See Pl. Opp. at 18 ("there is only one copyright, afforded in the work's country of origin and then recognized by the international community pursuant to treaty obligations").

2

is "recognized" and where it "arises." Plaintiffs concede that without French domestic law, there is no copyright in France, just as there is no U.S. copyright without U.S. domestic law. To the same extent that copyright in "Double Shot" *arises under* U.S. domestic law, when the work is exploited in the U.S., it *arises under* French law when it is exploited in France, as *Siegel* recognized ("the right to exploit the work abroad that would be governed by the copyright laws of foreign nations"). That right to exploit the work abroad is exactly what the Copyright Act places outside the scope of statutory termination in 17 U.S.C. 304(c)(6)(E).

If the copyright in a work "arises" only under the law of its source country, as Plaintiffs argue,[3] then works created outside the U.S. would have no termination rights at all, because Section 304 provides that termination only affects rights that "arise under this title," *i.e.* the U.S. Copyright Act. So the songs of Elton John or the Beatles would not have the benefit of the termination right, according to Plaintiffs, because the copyrights in those songs "arise under" foreign law and are merely "recognized" in the U.S.

This is preposterous. It would not only come as a shock to the Elton Johns of the world, it would also place the U.S. in flagrant violation of its obligation under the Berne Convention to treat foreign authors in the same manner as U.S. authors. See Berne Art. 5(3)("[w]hen the author is not a national of the country of origin of the work for which he is protected under this Convention, he shall enjoy in that country the same rights as national authors").[4]

---

[3] See Pl. Opp. at 12, n.41 ("foreign works do not receive a 'United States copyright' as a basis for protection").

[4] See, e.g., WIPO NATIONAL SEMINAR ON COPYRIGHT AND RELATED RIGHTS FOR LAWYERS AND JUDGES, WIPO CR/DAM/05/8 (2005), http://www.wipo.int (accessed January 23, 2024), discussing the principle of national treatment, a "basic elements of protection

3

The two cases on which Plaintiffs spill the most unwarranted ink, *Itar-Tass Russian News v. Russian Kurier,* 153 F.3d 82 (2d Cir. 1998) and *Kirtsaeng v. John Wiley & Sons, Inc.,* 568 U.S. 519 (2013), resolve completely different issues and cannot fairly be read to say anything at all about the questions before this Honorable Court. This case is about transfers of copyright ownership, and the extent to which they can be terminated.

*Itar-Tass* is not about transfers of copyright ownership. It is about *initial* ownership of copyright, under the work-for-hire doctrine, and expressly states that it does not purport to address assignments of ownership. *Itar-Tass* at 91 n.11 ("In deciding that the law of the country of origin determines the ownership of copyright, we consider only initial ownership, and have no occasion to consider choice of law issues concerning assignments of rights.") Plaintiffs bury this acknowledged limitation of the *Itar-Tass* holding in a footnote (Pl. Opp. at 23, n. 61), but it is fatal to their attempt to leverage that case into support for their position here, in a case that is *only* about assignments of rights.

Plaintiffs' reliance on *Kirtsaeng* is even more egregiously misplaced. Plaintiffs blithely assert the facts of *Kirtsaeng* "are not particularly important" (Pl. Opp. at 35), a sure sign that they don't want to talk about them because the case is so easily distinguishable. That case was not about transfers of copyright ownership, like this case, or even initial copyright ownership, like *Itar-Tass*, but was instead about the scope of an affirmative defense to infringement, *i.e.* the first-sale doctrine under 17 U.S.C. §109(a). Publisher John Wiley & Sons made textbooks, and produced lower-cost editions of these books for foreign markets. Petitioner Kirtsaeng acquired these legitimate foreign editions

---

under the Berne Convention" through which "works originating in one of the member States must be protected in each of the member States in the same way that such States protect the works of their own nationals.")

4

outside the U.S. and re-sold them, relying on the first-sale doctrine, which permits resale of copies "lawfully made under this title." That section of the statute, §109(a), uses the fragmentary phrase "under this title," as does the relevant section in this case, §304(c)(6)(E), but the similarity ends there. *Kirtsaeng* asks only about whether the conduct of manufacturing particular copies of the work was lawful; it nowhere asks, as this Honorable Court must, the extent to which particular rights of the owner "*arise under this title.*" And as Plaintiffs themselves point out (Pl. Opp. at 9), conduct and ownership are two very different things. *Kirtsaeng* deals with conduct, *i.e.* the manufacturing of physical copies of a book, not with ownership, and with the applicability of an affirmative defense, not the scope of a limitation on the termination of transfers of ownership.

## CONCLUSION

Based on the above reasons and authorities, and the reasons and authorities set forth in Defendants' initial Memorandum of Law in support of this motion, Defendants respectfully submit that the Complaint should be dismissed with prejudice in all respects.

**PROVOSTY & GANKENDORFF, LLC**

    */s/ Edgar D. Gankendorff*
**Edgar D. Gankendorff (LA Bar #20550)**
**Christophe B. Szapary (LA Bar #25890)**
650 Poydras Street, Suite 2700
New Orleans, Louisiana  70130
Telephone: 504-410-2795
Facsimile: 504-410-2796
egankendorff@provostylaw.com
cszapary@provostylaw.com
*Attorneys for Defendants*

AND

        **REITLER KAILAS & ROSENBLATT, LLP**
        Robert W. Clarida (*pro hac vice*)
        T.A. Brian D. Caplan (*pro hac vice*)
        885 Third Avenue, 20th Floor
        New York New York 10022
        Telephone: (212) 209-3059
        bcaplan@reitlerlaw.com
        rclarida@reitlerlaw.com
        *Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing was filed this 26th day of January, 2024, day electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the court's electronic filing system.

                                                  */s/ Edgar D. Gankendorff*
                                           **Edgar D. Gankendorff**