UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **CYRIL VETTER** *and* **VETTER COMMUNICATIONS CORP** * * * * | |
| **VERSUS** * * * | **CIVIL ACTION: 3:23-CV-01369-SDD-EWD** |
| **ROBERT RESNIK** *individually and d/b/a* **RESNIK MUSIC GROUP** * * * | |

**SUR-REPLY MEMORANDUM
IN OPPOSITION TO MOTION TO DISMISS**

The plaintiffs, Cyril Vetter and Vetter Communications Corp, by and through the undersigned counsel, respectfully submit this sur-reply memorandum in opposition to the *Motion to Dismiss* (R. Doc. 12) filed by the defendant, Robert Resnik.

1.  It is notable that the *Reply* (R. Doc. 23) essentially ignores Count One of the *Complaint* (R. Doc. 1) altogether in suggesting that "[t]his case is about transfers of copyright ownership, and the extent to which they can be terminated."[1] As it always has, Count One asks the Court to declare the ownership of the Renewal Copyright Interest obtained by Mr. Smith's heirs pursuant to the renewal provisions of the 1909 Copyright Act—*not* the termination provisions of the 1976 Copyright Act. While similar, those provisions are not interchangeable. For the reasons previously detailed in the *Opposition*,[2] unlike rights recaptured by termination, a renewal copyright must be considered a new property interest. The nature and scope of that new property interest is properly determined under United States law in accordance with the principles outlined in *Itar-*

---

[1] R. Doc. 23, at 4.
[2] R. Doc. 17, at 14-15.

1

*Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82 (2d Cir. 1998). In that respect, the plain language of the 1909 Copyright Act dictates that Mr. Smith's heirs took ownership of the Renewal Copyright Interest "free of any claim founded upon an assignment made by [Mr. Smith] in his lifetime."[3] The defendant's claim to continued exploitation rights in the Renewal Copyright Interest is undoubtedly founded upon Mr. Smith's assignment to Windsong in 1963. Accordingly, it should be rejected. The *Reply* offers nothing to the contrary.

    2.    As to Count Two, the *Reply* oversells the extent to which the plaintiffs' position has been judicially rejected. There is no dispute that the few courts to consider the geographical scope of termination rights have ruled contrary to the plaintiffs' position. However, a handful of district court decisions from outside this Circuit—all of which lack meaningful analysis of the issue—can in no way be said to mandate a result here. This is especially true given that the defendant's seminal case, *Siegel v. Warner Bros. Ent. Inc.*, 542 F. Supp. 2d 1098 (C.D. Cal. 2008), has been called into serious doubt by the Supreme Court's decision in *Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519 (2013). The defendant says *Kirtsaeng* is irrelevant—and that the plaintiffs' reliance on the opinion is "egregiously misplaced"—because the decision did not directly address termination rights.[4] But, of course, a prior decision need not be on all fours to be relevant. In fact, *Kirtsaeng* is relevant here, if for no other reason, because "there is a presumption that a given term is used to mean the same thing throughout a statute." *Brown v. Gardner*, 513 U.S. 115, 118 (1994). *Kirtsaeng* held that the phrase "under this title" lacks geographic significance in the context of the 1976 Copyright Act's first sale provisions. Accordingly, following *Kirtsaeng*, it is impossible to presume, as the *Siegel* court did,[5] that the phrase "rights

---

[3] R. Doc. 17, at 17-18 (quoting *Stewart v. Abend*, 495 U.S. 207, 219 (1990)).
[4] R. Doc. 23, at 4.
[5] *Siegel*, 542 F. Supp. 2d at 1140 (equating "rights that arise under this title" with "rights enumerated in Title 17 of the United States Code.")

that arise under this title" in Section 304(c)(E) imposes an inherent geographical limitation on the scope of rights returned to the author following termination. To the contrary, following *Kirtsaeng*, there is a presumption that "under this title" *lacks* geographical significance when used in the Copyright Act. Nothing in the *Reply* explains why this presumption should not apply here.

    3.    Also irrelevant, says the defendant, is any discussion of patent and trademark law because the case at bar only concerns copyright law. However, in the absence of controlling precedent, it is natural and proper to reason by analogy through consideration of "similar language in other contexts." *United States v. Rayo-Valdez*, 302 F.3d 314, 316 (5th Cir. 2002). As detailed in the *Opposition*,[6] when compared to the laws and treaties governing patents and trademarks, it is clear that copyrights are not, as the defendant argues, "territorial" in the sense that a separate and distinct property interest exists in every foreign territory with which the United States has copyright relations. The defendant labels the analogies to patent and trademark law "irrelevant excursions,"[7] but fails to provide any substantive reason why the Court should not consider them.

    4.    More generally (but along the same lines), the defendant caricatures the plaintiffs' arguments concerning the principle of territoriality as it relates to domestic copyright law. The defendant attempts to restate the plaintiffs' position here to be that "domestic law is actually global."[8] This "restatement" distorts the plaintiffs' position beyond fair recognition. What the plaintiffs have *actually* argued is that there is a single copyright interest in a given work, that such copyright interest must have a "country of origin," and that, in general, the laws of that country will govern issues of copyright ownership throughout the world. This is not to say that "domestic law is global," but rather, that there is an inescapable distinction between the law applied to

---

[6] R. Doc. 17, at 8-13.
[7] R. Doc. 23, at 2.
[8] *Id.*

3

copyright *infringement* and the law applied to the antecedent question of copyright *ownership*. Only after the ownership question has been answered does the presumption against extra-territorial application of the Copyright Act become relevant to foreign conduct.

5.  Importantly, the distinction between *lex originis* (for ownership) and *lex loci delicti* (for infringements) is hardly original or "novel" to the plaintiffs. In addition to *Itar-Tass*, which addressed issues of initial ownership, the plaintiffs have directed the Court to numerous cases in which ownership through assignment is determined using the same choice of law analysis.[9] One of those cases, *Creazioni Artistiche Musicali, S.r.l. v. Carlin Am., Inc.*, 2016 WL 7507757 (S.D.N.Y. Dec. 30, 2016), is well known to the defendant's *pro hac vice* counsel, as it was litigated by one of the attorneys appearing before the Court in this action. *Creazioni*, along with the other cases cited by the plaintiffs, stands firmly for the proposition that questions of copyright ownership, whether through authorship *or* assignment, should be resolved using the law of the country with the closest relationship to the work. Given this, there is simply no fair-minded basis to accuse the plaintiffs, as the defendant has, of failing to provide the Court with "a single relevant precedent"[10] on the issue. That claim is evidently false and remarkably cavalier.

6.  Lastly, the *Reply* posits that accepting the plaintiffs' position would mean that works of foreign origin are ineligible for recapture through termination.[11] It is ironic that the defendant asks the Court to reject the plaintiffs' interpretation of United States copyright law—an interpretation that would *greatly* benefit United States authors—out of an ostensible concern for foreign authors. After all, the United States Congress does not generally legislate for the benefit of foreign nationals, especially at the expense of Americans. That said, contrary to the defendant's

---

[9] *See* R. Doc. 17, at 41.
[10] R. Doc. 23, at 1.
[11] *Id.* at 3.

supposition, the plaintiffs' statutory interpretation does nothing to inherently exclude foreign authors from United States termination rights. The obligation of "national treatment" certainly seems broad enough to require United States courts to provide foreign authors with the same post-termination legal enforcement benefits as those afforded to domestic authors.[12] The plaintiffs have not argued otherwise. But even if a foreign author's termination rights are recognized within the United States, that author might still face contractual consequences *outside* of the United States if the original transfer is governed by foreign law.[13] Those consequences, unfortunate as they may be, are beyond the reach of United States law to address. To the extent that foreign authors desire to have worldwide or consequence-free termination rights, that is a matter for them to address through their own legislative process, not the United States Congress. Here, Mr. Vetter is a United States citizen who assigned his United States copyright to a United States corporation pursuant to an agreement governed by United States law. In this light, questions regarding the scope of "national treatment" owed to foreign authors are simply a distraction.

*\*\**

Like the *Motion to Dismiss*, the *Reply* effectively conveys the incredulity with which the defendant views the plaintiffs' legal arguments. That said, the defendant has yet to articulate how and why those arguments are wrong. Accordingly, the *Motion to Dismiss* should be denied.

                                            Respectfully submitted,

                                            **WELLS & KAPPEL, LLP**

                                            /s/ Timothy Kappel
                                            Timothy R.W. Kappel, LA Bar No. 32881 (Lead Attorney)

---

[12] *See* 17 U.S.C. § 501(b).

[13] For example, the musical group Duran Duran was recently found by an English court to be in breach of their English publishing contract following their attempted invocation of United States termination rights. *See Gloucester Place Music Ltd. v. Le Bon* (2016) EWHC (Ch) 3091 (Eng).

1615 Poydras Street, Suite 900<br>
New Orleans, Louisiana 70112<br>
Telephone: (504) 905-2012<br>
Email: tkappel@wellskappel.com

*Counsel for Cyril Vetter and Vetter Communications Corp.*

## CERTIFICATE OF SERVICE

I hereby certify that on February 5, 2024, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be served upon all counsel of record by operation of the Court's electronic filing system.

/s/ Timothy Kappel