UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **CYRIL VETTER** *and* **VETTER COMMUNICATIONS CORP** | * * * * * |
| **VERSUS** | * * CIVIL ACTION: 3:23-CV-01369-SDD-EWD * * |
| **ROBERT RESNIK** *individually and d/b/a* **RESNIK MUSIC GROUP** | * * * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

The plaintiffs, Cyril Vetter and Vetter Communications Corp, by and through the undersigned counsel, respectfully submit this memorandum in support of the *Motion for Summary Judgment* filed concurrently herewith.

**Background**

The plaintiffs have asked the Court to declare them the sole owners of the copyright in the musical work "Double Shot (Of My Baby's Love)" (the "Song"), co-authored in 1962 by Mr. Vetter and his friend, Don Smith.[1] The requested declaration calls on the Court to interpret the renewal provisions of the United States Copyright Act of 1909 (the "1909 Act") and the reversion provisions of its statutory successor, the United States Copyright Act of 1976 (the "1976 Act"). The plaintiffs argue that the renewal copyright interest in the Song (the "Renewal Copyright Interest") obtained by Mr. Smith's heirs (and later acquired by Vetter Communications Corp) in accordance with the 1909 Act represents a new property interest that cut off all rights of the prior owner. Likewise, the plaintiffs contend that the recaptured copyright interest (the "Recaptured

---
[1] Rec. Doc. 1, at ¶124(i), (ii).

1

Copyright Interest") obtained by Mr. Vetter in accordance with the reversion provisions of the 1976 Act returns to him all rights attendant to copyright ownership in the Song that were previously transferred away. By contrast, the defendant argues that the law provides him with the unqualified right to exploit the Song in every country of the world apart from the United States.

The material facts relevant to this motion are as follows. In 1963, Mr. Vetter and Mr. Smith transferred their respective interests in the Song to Windsong Music Publishers, Inc. ("Windsong").[2] The transfer included all worldwide rights in the Song for the entire duration of copyright protection, including any renewals thereof.[3] Mr. Smith died in 1972.[4] In 1994, Mr. Vetter and Mr. Smith's heirs secured the Renewal Copyright Interest in the Song.[5] Mr. Vetter's portion of the Renewal Copyright Interest was transferred to Windsong pursuant to the 1963 assignment.[6] Because Mr. Smith was not alive at the time the renewal term of copyright protection vested, his share of the Renewal Copyright Interest went to his heirs. Vetter Communications later acquired the heirs' share of the Renewal Copyright Interest.[7] In 2022, pursuant to Section 304(c) of the 1976 Act, Mr. Vetter secured ownership of the Recaptured Copyright Interest.[8]

To be clear, these material facts are not in dispute.[9] Rather, the dispute between the parties is simply as to the legal scope of the plaintiffs' rights in the Song by way of the Renewal Copyright Interest and the Recaptured Copyright Interest.[10] Without answering the *Complaint*, the defendant filed a *Motion to Dismiss* insisting that the Court dispose of the plaintiffs' claims as "unsustainable

---

[2] Rec. Doc. 1-2.
[3] *Id*.
[4] *See* **Exhibit A** (Affidavit of Cyril Vetter), at ¶4.
[5] Rec. Doc. 1-3.
[6] Rec. Doc. 1-2.
[7] *See* **Exhibit A** (Affidavit of Cyril Vetter), at ¶6.
[8] Rec. Doc. 1-8.
[9] *See* Rec. Doc. 18, at 4 (noting that "[t]he parties believe that the issues presented herein are purely legal and may be decided without a trial.")
[10] *Id.* at 2.

as a matter of law" pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[11] The plaintiffs opposed the motion.[12] On July 12, 2024, the Court issued a *Ruling*[13] denying the *Motion to Dismiss* on the grounds that the plaintiffs' claims were, in fact, supported by the history, text, and purpose of the 1909 Act (with respect to the Renewal Copyright Interest) and the 1976 Act (with respect to the Recaptured Copyright Interest). Following the Court's legal determinations outlined in the *Ruling*, and without any dispute as to the material facts between the parties, the plaintiffs respectfully submit that summary judgment in their favor is warranted.

## Legal Standard

Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). Relevant here, a movant can establish an "entitlement to judgment as a matter of law" by demonstrating that the only issue before the court is a pure question of law and that said question should be answered in the movant's favor. *Sheline v. Dun & Bradstreet Corp.*, 948 F.2d 174, 176 (5th Cir. 1991).

## Analysis

At its core, this dispute calls upon the Court to resolve competing theories of statutory interpretation regarding the renewal provisions of 1909 Act and reversion provisions of the 1976 Act. This task undoubtedly presents questions of law which may be answered on a motion for summary judgment. *See Kemp v. G.D. Searle & Co.*, 103 F.3d 405, 407 (5th Cir. 1997). Those

---

[11] Rec. Doc. 12.
[12] *See generally* Rec. Docs. 17, 27.
[13] Rec. Doc. 28.

questions should be answered in the plaintiffs' favor for three reasons, all of which have already been successfully advanced by the plaintiffs in connection with the *Motion to Dismiss*.

First, the lynchpin of the defendant's entire legal analysis—that there is a multiplicity of separate and distinct copyright property interests around the world in a single work of United States origin—is unsupported (if not outright contradicted) by the statutory text of United States copyright law and the judicial decisions interpreting the same. On this point, the Court determined that "it is more plausible that protection in member countries is attendant to the U.S. copyright rather than the conclusion that each member country grants an entirely separate and new copyright by virtue of the Berne Convention."[14]

Second, relevant Supreme Court precedent confirms that the Renewal Copyright Interest represents a new property estate in the Song that Mr. Smith's heirs acquired free and clear of *any* rights previously granted away, including those currently claimed by the defendant. Here, the Court found "no compelling reason why these principles should not apply abroad [to give] the author's heirs a new estate clear of all rights that were granted away, as evidently intended by the legislature and as articulated by the Supreme Court in *Stewart*."[15]

Third, the text and legislative history of the 1976 Act support the plaintiffs' claim that the Recaptured Copyright Interest encompasses *all* rights flowing from domestic copyright protection which were previously granted away, including those currently claimed by the defendant. As to this issue, the Court concluded that "[i]t plausibly and logically follows that a termination of a worldwide grant results in the recapture of worldwide rights; in other words, worldwide rights were covered by the terminated grant, so worldwide rights revert upon termination."[16]

---

[14] Rec. Doc. 28, at 24.
[15] *Id. See also id.* at 26 ("Defendant has failed to submit sufficient authority to persuade the Court that the words "holds nothing" should be interpreted to mean "holds exclusive rights in all countries other than the United States.")
[16] *Id.* at 36.

4

Of course, there is much more in addition to this summary argument that might be said here in support of the plaintiffs' request. However, given the exhaustive briefing previously submitted to the Court on these issues in connection with the *Motion to Dismiss*, the Court's present familiarity with the plaintiffs' positions on the same, and the Court's conclusion in the *Ruling* that those positions are legally supported, the plaintiffs see no judicial economy in merely reciting them in detail again here. Instead, the plaintiffs respectfully request that the Court take judicial notice of the legal arguments previously made in the *Opposition to Defendant's Motion to Dismiss*[17] and the *Sur-Reply in Opposition to Defendant's Motion to Dismiss*[18] and deem them incorporated herein. When those arguments are evaluated together with the *Statement of Material Facts*[19] and the affidavits submitted in connection herewith, the plaintiffs have established an entitlement to judgment as a matter of law. Having met that initial burden, it should now be incumbent upon the defendant to provide the Court with something other than the overstretched interpretations and conclusory statements of law previously rejected in the *Ruling*.[20]

## **Conclusion**

In the plaintiffs' view, the legal determinations made by the Court in the *Ruling* reflect the correct interpretation of the renewal provisions of the 1909 Act and the reversion provisions of the 1976 Act. In a procedurally different posture, the *Ruling* would have ended this case. With this motion, the Court can now do so in normal course. Most significantly, though, the Court can now ensure that Mr. Vetter finally—*after over 60 years*—regains what he regrettably transferred away in the haze of youth: the exclusive right to harvest the fruits of his creative labor. Such a result is

---

[17] Rec. Doc. 17 (also attached hereto as **Exhibit B**).
[18] Rec. Doc. 27 (also attached hereto as **Exhibit C**).
[19] The *Statement of Material Facts* is attached hereto as **Exhibit D**.
[20] The plaintiffs would of course file a reply brief to respond to any new legal arguments or authority offered by the defendant in connection with this motion.

not only just, but is, in fact, squarely consistent with the fundamental legislative purpose of renewals and reversions. Accordingly, the plaintiffs respectfully request that the Court issue summary judgment in their favor on all claims.

        Respectfully submitted,

        **WELLS & KAPPEL, LLP**

        /s/ Timothy Kappel
        Timothy R.W. Kappel, LA Bar No. 32881 (Lead Attorney)
        1615 Poydras Street, Suite 900
        New Orleans, Louisiana 70112
        Telephone: (504) 905-2012
        Email: tkappel@wellskappel.com

        *Counsel for Cyril Vetter and Vetter Communications Corp.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 23, 2024, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be served upon all counsel of record by operation of the Court's electronic filing system.

/s/ Timothy Kappel