UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| **CYRIL VETTER** *and* **VETTER COMMUNICATIONS CORP** | * * * * * |  |
| VERSUS | * | CIVIL ACTION: 3:23-cv-01369-SDD-EWD |
|  | * * |  |
| **ROBERT RESNIK** *individually and d/b/a* **RESNIK MUSIC GROUP** | * * * |  |

* * * * * * * * * * * * * * * * * * * * * * * * *

**MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION TO AMEND ORDER**

The plaintiffs, Cyril Vetter and Vetter Communications Corp, by and through undersigned counsel, respectfully submit this memorandum in opposition to the *Motion to Amend Order Pursuant to 28 U.S.C. § 1292(b)* (Rec. Doc. 33) filed by the defendant, Robert Resnik.

**Summary Argument**

The defendant has previously argued that the issues presented here are "well-settled"[1] and "very simple"[2] and represented to the Court that the resolution of these issues would not require discovery (fact or expert) or even a trial.[3] It was only months ago that, according to the defendant, a straightforward application of the "plain language"[4] of the United States Copyright Act and binding United States Supreme Court precedent demanded a swift and summary rejection of the plaintiffs' unique "misunderstanding" of the law.[5] By contrast, the defendant now says the issues

---

[1] Rec. Doc. 12-1, at 1.
[2] Rec. Doc. 23, at 1.
[3] Rec. Doc. 18, at 4.
[4] Rec. Doc. 12-1, at 5; Rec. Doc. 23, at 1.
[5] Rec. Doc. 12-1, at 1.

1

presented are so "complex, difficult and novel"[6] that they are beyond the Court's purview to address in normal order. The defendant never explains or even acknowledges this about-face. Perhaps that is because the only thing that has changed since the defendant ascribed legal certainty to the issues at hand is that the Court entered a *Ruling* in the plaintiffs' favor on those issues.[7] The defendant now takes the extraordinary step of requesting interlocutory appeal to avoid disruption of "long-settled business practices throughout the music publishing industry"[8] which the plaintiffs believe (and the *Ruling* suggests) lack legal support. While no one would question that interlocutory appeal has its time and place, it is not and has never been a vehicle to—as the defendant attempts to do now—test the correctness of a district court judgment before a new audience. Moreover, fundamental fairness in the litigation process demands that the defendant not be allowed to retreat from his prior positions on matters such as the need for discovery and trial simply because he did not prevail on the *Motion to Dismiss*. To allow otherwise would encourage procedural gamesmanship and litigation tactics which are anathema to basic rules of engagement. Accordingly, and for the reasons below, the defendant's motion should be denied.

## **Background**

The plaintiffs have asked the Court to declare them the sole owners of the copyright in the musical work "Double Shot (Of My Baby's Love)" (the "Song"), co-authored in 1962 by Cyril Vetter and his friend, Don Smith. The requested declaration calls on the Court to interpret the renewal provisions of the United States Copyright Act of 1909 (the "1909 Act") and the reversion provisions of its statutory successor, the United States Copyright Act of 1976 (the "1976 Act"). The plaintiffs argue that the renewal copyright interest in the Song (the "Renewal Copyright

---

[6] Rec. Doc. 33-1, at 1.
[7] *See generally* Rec. Doc. 28.
[8] Rec. Doc. 33-1, at 9.

Interest") obtained by Mr. Smith's heirs (and later acquired by Vetter Communications Corp) in accordance with the 1909 Act represents a new property estate that cuts off all rights of the prior owner. Likewise, the plaintiffs contend that the recaptured copyright interest (the "Recaptured Copyright Interest") obtained by Mr. Vetter in accordance with the reversion provisions of the 1976 Act returns to him all rights attendant to copyright ownership in the Song that were previously transferred away. By contrast, the defendant argues that, even following reversion and recapture, the law provides him with the unqualified right to exploit the Song in every country of the world apart from the United States.

As previously noted, the defendant sought to dismiss the plaintiffs' claims as "unsustainable as a matter of law" pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[9] The plaintiffs opposed the motion.[10] On July 12, 2024, the Court issued a *Ruling* in which it determined that the plaintiffs' legal positions are supported by the history, text, and purpose of the 1909 Act (with respect to the Renewal Copyright Interest) and the 1976 Act (with respect to the Recaptured Copyright Interest). In view of the conclusions reached in the *Ruling* and the uncontested material facts relevant to the parties' dispute, the plaintiffs have filed a *Motion for Summary Judgment* which is pending before the Court.[11] Obviously, the defendant disagrees with the Court's conclusions in the *Ruling* and is free to oppose the plaintiffs' request for summary judgment. Alternatively, the defendant could request reconsideration of the *Ruling* pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. Either way, the defendant currently has ample opportunity in the normal course of this proceeding to challenge the correctness of the *Ruling*. Yet,

---

[9] *See generally* Rec. Docs. 12, 23.
[10] *See generally* Rec. Docs. 17, 27.
[11] Rec. Doc. 30.

the defendant instead asks the Court to take the exceptional step of certifying the *Ruling* for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

## Legal Standard

In general, interlocutory appeals in this Circuit are "disfavored, and statutes permitting them must be strictly construed." *Allen v. Okam Holdings, Inc.*, 116 F.3d 153, 154 (5th Cir. 1997). Indeed, the "basic rule of appellate jurisdiction restricts review to final judgments, avoiding the delay and extra effort of piecemeal appeals." *Clark-Dietz & Associates-Engineers, Inc. v. Basic Constr. Co.*, 702 F.2d 67, 69 (5th Cir. 1983). By its own terms, certification of an otherwise unappealable order for interlocutory appeal under Section 1292(b) is appropriate only if three conditions are met. First, the order from which the appeal is taken must involve a controlling question of law. Second, there must be substantial ground for difference of opinion concerning that question. Third, immediate appellate resolution of that question must have the potential to advance the ultimate termination of the litigation in the district court. The burden of establishing the appropriateness and necessity of interlocutory appeal falls squarely on the party requesting certification. *Simoneaux v. E.I. du Pont de Nemours & Co.*, 2016 WL 236239, at *3 (M.D. La. 2016) (Dick, J.). Even when each condition is established, the decision to certify an interlocutory order for immediate appeal is firmly within the district court's discretion. *Johnson v. Ardoin*, 2019 WL 4318487, at *1 (M.D. La. 2019) (Dick, C.J.). One thing is for certain, interlocutory appeal cannot be used by a disappointed litigant simply to determine the correctness of an adverse judgment. *Clark-Dietz*, 702 F.2d at 68.

## Analysis

The defendant has not met the foregoing standard to warrant certification of the *Ruling* for immediate appeal. Specifically, although the *Ruling* certainly involves controlling questions of

law, the defendant's request does not meet the remaining two requirements for certification. Each is addressed below.

### A. Controlling Question of Law

Generally, a controlling question of law is one that deeply affects the ongoing process of litigation. *R.J. Reynolds Tobacco Company v. Hudson*, 314 F.2d 776, 778 (5th Cir. 1963). In this District, however, courts (including this one) have held that a controlling question of law must refer to a "pure question of law" that the Fifth Circuit could decide quickly and cleanly without having to study the record. *See, e.g.*, *Gruver v. Louisiana Through Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll.*, 2019 WL 6245421, at *3 (M.D. La. 2019) (Dick, C.J.).[12] As far as the plaintiffs are concerned, determination of the legal scope of the rights returned to Mr. Smith's heirs pursuant to the renewal provisions of the 1909 Act and Mr. Vetter pursuant to the reversion provisions of the 1976 Act surely clears this bar. As the Court noted in the *Ruling*, "the parties' arguments all lead back to the overarching integral issue of the nature of a United States copyright in a work that is exploited abroad."[13]

Until recently, the parties agreed on the purely legal nature of these proceedings.[14] In his quest for interlocutory appeal, however, the defendant now argues otherwise. Specifically, the defendant now posits that both fact and expert discovery would consume "considerable time and expense" before the Court can render a final judgment on the plaintiffs' rights in the Song.[15] In regards to fact discovery, the defendant never explains his attempt to walk away from his prior

---

[12] Other district courts in this Circuit take the same approach. *See, e.g., Lake Charles Harbor & Terminal Dist. v. Reynolds Metal Co.*, 2021 WL 5828720, at *2 (W.D. La. 2021); *Williams v. Taylor*, 2015 WL 4755162, at *2 (E.D. La. 2015).
[13] Rec. Doc. 28, at 23.
[14] *See* Rec. Doc. 18, at 4 (noting in the mutually approved Status Report that "[t]he parties believe that the issues presented herein are purely legal and may be decided without a trial.").
[15] Rec. Doc. 33-1, at 27.

5

stipulation that none was needed.[16] As to the need for expert discovery, the defendant proffers (in conclusory fashion) that, in order for the Court to render a final judgment, "multiple experts on the relationship between U.S. and foreign copyright protection" would be required.[17] Putting aside for the moment that the *Ruling* rejected the notion that foreign law should apply to the ownership dispute at bar,[18] the defendant never explains why the Fifth Circuit would be better equipped to decide these issues on interlocutory appeal *without* the same guidance from experts. To be clear, the plaintiffs (as they always have) reject the idea that foreign law should have anything to say over the ownership of a domestic copyright. As of July 16, 2024, the Fifth Circuit is definitively in agreement with the plaintiffs on this point, holding in *Canadian Standards Ass'n v. P.S. Knight Co., Ltd.*, that "the ownership and essential nature of copyrights are determined by the law where the copyrights are held." 2024 WL 3418717, at *4 (5th Cir. 2024) (cleaned up) (applying Canadian law to determine ownership and validity of a Canadian copyright infringed in the United States). Accordingly, the plaintiffs flatly dispute the defendant's premise regarding the need for expert discovery since expert testimony on *domestic* law would not be permitted in the first instance. *Highland Cap. Mgmt., L.P. v. Bank of Am., N.A.*, 574 F. App'x 486, 491 (5th Cir. 2014) ("[L]egal conclusions [are] reserved for the court."). Nevertheless, because the plaintiffs continue to view the questions answered in the *Ruling* as "purely legal," they concur only in the conclusion that the first requirement of Section 1292(b) interlocutory appeal is met.

### B. Substantial Ground for Disagreement

For whatever consensus there is between the parties as to the first requirement of interlocutory appeal, there is decidedly less regarding the second. The defendant states that this

---

[16] This stipulation was the *sole* reason the plaintiffs joined in the defendant's request for a stay of discovery (Rec. Doc. 21) pending a ruling on the *Motion to Dismiss*.
[17] Rec. Doc. 33-1, at 11.
[18] Rec. Doc. 28, at 22.

6

requirement is the "least troubling for district courts," and that a substantial ground for difference of opinion can easily be found where "the Court of Appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented."[19] That statement may be true in the abstract, but courts in this District have taken a more nuanced approach. For example, whereas the defendant presents this requirement as a low bar to clear, the Court has previously stated the opposite. *See Bennett v. Louisiana Health Serv. & Indem. Co.*, 2020 WL 5763604, at *7 (M.D. La. 2020) (Dick, C.J.) ("The threshold for establishing the substantial ground for difference of opinion required for certification pursuant to § 1292(b) is a high one.") (internal alterations omitted). In fact, the Court has noted that a substantial ground for difference of opinion "usually only arises out of a genuine doubt as to the correct applicable legal standard relied on in the order." *Gruver*, 2019 WL 6245421, at *2 (internal quotations and citations omitted). To demonstrate such doubt, the Court has articulated criteria that are somewhat more restrictive than those outlined by the defendant:

> A substantial ground for difference of opinion exists where: a trial court rules in a manner which appears contrary to the rulings of all Courts of Appeals which have reached the issue, if the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented.

*Bennett*, 2020 WL 5763604, at *6. Each of the foregoing possibilities is addressed below. But before turning to the criteria outlined in *Bennett*, it is worth noting that the defendant devotes significant portions of his memorandum to rehashing arguments that were made in the *Motion to Dismiss*. To be sure, a substantial disagreement for purposes of Section 1292(b) does not exist "[m]erely because a party is disappointed by a ruling, or insists that a district court has ruled

---

[19] Rec. Doc. 33-1, at 5.

7

incorrectly." *Cedar Lodge Plantation, LLC v. CSHV Fairway View I, LLC*, 2021 WL 7085141, at *1 (M.D. La. 2021) (Jackson, J.). In fact, very little of the defendant's memorandum actually addresses the reasoning and conclusions of the *Ruling* itself but instead continues a boundless critique of the plaintiffs' positions previously advanced—a critique that would be far more at home in opposition to the *Motion for Summary Judgment* or on appeal following a final adjudication in normal order. Of course, these avenues for advocacy are and will remain available to the defendant even if the Court denies certification.

### i. Contrary Courts of Appeals Decisions

Turning now to the criteria outlined in *Bennett*. In no way can it be said that the *Ruling* is "contrary to the rulings of all Courts of Appeals which have reached the [same] issue[s]." *Bennett*, 2020 WL 5763604, at *6. Depending on the level of granularity, the Courts of Appeals are either silent or in accord with the *Ruling* in every respect. For example, in determining that copyright law is distinct from patent and trademark law with respect to the "territorial" nature of the property interest, the Court drew its conclusion directly from Fifth Circuit precedent.[20] This conclusion was further buttressed by a Ninth Circuit opinion in which that court observed that domestic copyright protections are *afforded* to "foreign copyright holders" by virtue of the Berne Convention.[21] Following the issuance of the *Ruling*, the Fifth Circuit provided additional support for the underlying premise that a copyright is "held" in a source country regardless of where infringement takes place. *Canadian Standards*, 2024 WL 3418717, at *4. Unable to point to any uniformity of opposition at the Court of Appeals level, the defendant repeatedly speculates as to what the Fifth Circuit *might* conclude, but he can only offer certainty with respect to one observation: that "the

---

[20] Rec. Doc. 28, at 25 (*citing Geo. Serv., Inc. v. TGS-NOPEC Geo. Co.*, 850 F.3d 785 (5th Cir. 2017)).
[21] *Id.* at 24 (*citing Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 52 F.4th 1054, 1078 (9th Cir. 2022)).

Fifth Circuit does not have to accept [the Court's legal conclusions] as true."[22] Fair enough, but "the mere fact that settled law might be applied differently is insufficient to show that there is a substantial ground for difference of opinion." *Bennett*, 2020 WL 5763604, at *7 (internal citations and quotations omitted). Moreover, the possibility of reversal on *de novo* review exists in every decision a district court issues which involves the interpretation of law. If the mere possibility of reversal were sufficient for purposes of Section 1292(b), "virtually every erroneous ruling by a district court would be rendered subject to interlocutory appeal." *United States v. Louisiana*, 2016 WL 4522171, at *3 (M.D. La. 2016) (deGravelles, J.) (cleaned up). This would "hardly comport with Congress' design to reserve interlocutory review for 'exceptional' cases while generally retaining for the federal courts a firm final judgment rule." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 74 (1996). Accordingly, because the defendant has failed to identify a uniformity of opposition in the Courts of Appeals, he has not established substantial ground for disagreement through this *Bennett* factor.

     ii.   ***Dispute Between the Circuits***

As previously noted, the Court has stated that substantial ground for disagreement as to the correct legal standard may exist "if the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point." *Bennett*, 2020 WL 5763604, at *6. Here, again, depending on the level of granularity, the legal standards applied by the Court in the *Ruling* run the gamut from binding to *res nova*. For example, broadly framed, it is certainly true that the Fifth Circuit has never had occasion to squarely decide whether an author's renewal rights leave the original copyright transferee with the ability to exploit the work in every country outside of the United States, or whether the words "arise under this title" or the limitation articulated in 17 U.S.C.

---

[22] Rec. Doc. 33-1, at 20.

§ 304(c)(6)(E) in the reversion provisions of 1976 Act limit the geographic scope of reversion rights. Accordingly, if the defendant were able to point to some evidence of a genuine dispute between the Circuits on these issues, perhaps that would favor certification. But even under the broadest construction of the issues, there is only one instance—the Court's interpretation of 17 U.S.C. § 304(c)(6)(E)—in which the defendant credibly identifies a conflict with district courts outside of this Circuit which might represent substantial grounds for disagreement under *Bennett*.[23] However, the Court does not certify "issues" for interlocutory appeal, but rather, "orders." *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996). Accordingly, this one area of dispute, even if genuine, cannot carry the defendant's heavy burden to certify the *Ruling* in its entirety.

Framed more narrowly, however, there is (and can be) no disagreement as to the legal standard applied by the Court. With respect to copyright ownership: there is no dispute that the Lanham Act (governing trademarks) and the Patent Act (governing patents) expressly articulate the existence of multiple and distinct property interests that are territorially limited, but the Copyright Act does not;[24] there is no dispute that the Paris Convention (on trademarks and patents) articulates the same territorial distinction, whereas the Berne Convention (on copyrights) does not;[25] there is no dispute that copyright is a form of property, and that the laws of the country where the copyright is held—not the Berne Convention—governs the disposition of ownership claims;[26] and there is no dispute that district courts (including one in this District) have applied these principles in the context of assignments and licenses.[27] With respect to renewals and

---

[23] Rec. Doc. 28, 36-37 (declining to follow *Siegel v. Warner Bros. Entertainment, Inc.*, 542 F. Supp. 2d 1098 (C.D. Cal. 2008) and its progeny).
[24] *See* Rec. Doc. 28, at 24-25.
[25] *Id.*
[26] *Canadian Standards*, 2024 WL 3418717, at *4 (citing *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82, 91 (2d Cir. 1998)).
[27] *See* Rec. Doc. 17, at 41 (citing cases).

reversions: there is no dispute that Congress intended these protections to benefit the author and the author's heirs and *not* the transferee;[28] there is no dispute that the Supreme Court held in *Stewart* that the owner of the original copyright "holds nothing" following renewal by the heirs of a deceased author;[29] there is no dispute that the Supreme Court held in other circumstances that the phrase "arise under this title" lacks geographic significance;[30] there is no dispute that the same words in different places in a statute should generally be afforded the same meaning throughout;[31] there is no dispute that limitations on an otherwise broad property right should be narrowly construed;[32] and there is no dispute that the Court followed these principles in reaching an eminently defensible (and in the plaintiffs' view, correct) result in the *Ruling*. Viewed through this lens, the only thing in genuine dispute between the parties is the correctness of the Court's application of precedent to reach legal conclusions in the *Ruling*. But a dispute of that ilk is plainly inappropriate for interlocutory review. *Nairne v. Ardoin*, 2024 WL 492688, at *10 (M.D. La. 2024) (Dick, C.J.). Accordingly, the defendant has not established substantial ground for disagreement through this *Bennett* factor.

### iii.    Foreign Law or Novel and Difficult Questions of First Impression

The last chance for the defendant under *Bennett* is to argue that the *Ruling* addresses "complicated questions [that] arise under foreign law" or that the issues confronted by the Court present "novel and difficult questions of first impression." *Bennett*, 2020 WL 5763604, at *6. The defendant argues that the Court must examine "foreign law and the interplay of U.S. law and the Berne Convention," to render a final judgment in this matter,[33] and a significant portion of his

---

[28] Rec. Doc. 28, at 9-10.
[29] *Id.* at 26.
[30] *Id.* at 36-37.
[31] *Brown v. Gardner*, 513 U.S. 115, 118 (1994).
[32] *Fame Pub. Co. v. Alabama Custom Tape, Inc.*, 507 F.2d 667, 670 (5th Cir. 1975).
[33] Rec. Doc. 33-1, at 6.

11

memorandum is dedicated to the topic. Previously, however, the defendant urged the Court to ignore the Berne Convention altogether and look to the Copyright Act as "the sole source of authority for the rights of authors in the United States."[34] This contradiction notwithstanding, and irrespective of the defendant's lengthy efforts to convince the Court otherwise, the notion that "foreign law" is in any way relevant to the ownership of an American copyright appears definitively foreclosed by the Fifth Circuit's recent opinion in *Canadian Standards*.[35] Indeed, following that decision, the Court's prior (and future) application of domestic law to the ownership issues at bar is all the more sound.

As to the difficulty of the issues presented, the defendant has previously argued that they are "very simple"[36] and, in some regards, the plaintiffs are in accord with that assessment. Their view of renewal rights is simple: per the Supreme Court's decision in *Stewart*, the defendant holds *nothing* relative to the Renewal Copyright Interest. Their view of reversion rights is simple: all interest in the Song's copyright that Mr. Vetter transferred away in 1963 must be returned as a part of the Recaptured Copyright Interest. That said, having previously submitted nearly 50 pages of briefing on these issues for the Court's consideration, the plaintiffs are mindful not to overstate their simplicity. But the *Ruling* clearly illustrates the Court's command of the complexities and—despite his disagreement with the legal determinations therein—the defendant has not demonstrated (or even argued) that the complexity of these issues, standing alone, warrants immediate appellate intervention. Instead, the defendant bets the farm on their novelty.

Indeed, the defendant's memorandum invokes the novelty of the plaintiffs' claims nearly a dozen times in as many pages. But to what end? The defendant simply reiterates what the

---

[34] Rec. Doc. 12-1, at 7.
[35] 2024 WL 3418717, at *4.
[36] Rec. Doc. 23, at 1.

plaintiffs have always conceded: they are the first to judicially challenge "long-settled business practices throughout the music publishing industry" which they believe (and the *Ruling* suggests) lack legal support. Without more, the mere novelty of the conclusions reached in the *Ruling* does not warrant interlocutory appeal. *See Simoneaux*, 2016 WL 236239, at *4. To be sure, while the Court's determination that the renewal and reversion rights under the Copyright Act are not limited to the United States may be novel, this conclusion was not plucked out of thin air. In fact, as the *Ruling* illustrates, it is founded in well-established principles of statutory construction and represents a considered application of Supreme Court precedent. Moreover, to a degree, the defendant's incessant focus on novelty actually "undermines [his] ability to demonstrate that there are substantially differing views regarding the issue before the Court." *Gruver*, 2019 WL 6245421, at *3. After all, even if the Court's conclusions have "never been endorsed by the Supreme Court or any Circuit Court of Appeals, the inverse is also true—the Court's application has never been reversed or criticized, either." *Id.* (cleaned up). At best, the defendant has effectively demonstrated that he has a substantially different view from the Court's, and that is unquestionably short of the requirements of Section 1292(b).

### C.    Advance the Termination of Litigation

Even if the Court were to conclude that substantial ground for disagreement exists with respect to the relevant legal issues, interlocutory appeal is only permitted when resolution of those issues by the Court of Appeals will materially advance, not hinder, the ultimate termination of the litigation. *Clark-Dietz*, 702 F.2d at 69. It is this requirement where the gulf between the parties is the widest. The defendant summarily asserts that interlocutory appeal would save "considerable time and expense involved in fact discovery, foreign law expert discovery, summary judgment and

trial."[37] Three-fourths of that statement is demonstrably inaccurate. First, the purported need for expert discovery on foreign law is undercut in its entirety by the Fifth Circuit's decision in *Canadian Standards*. Second, regarding fact discovery, as previously noted, the plaintiffs agreed to join in the defendant's prior request for a stay of discovery on assurances that the operative facts of the plaintiffs' claims were not in dispute. The parties submitted a mutually approved Status Report stating as much.[38] The defendant should not be allowed to so quickly, and without explanation, retreat from his prior assurances to the plaintiffs or his representations to the Court simply because the *Motion to Dismiss* was denied. But even if the defendant is relieved of these prior commitments, the material facts of this case are neither numerous nor complex. Consequently, and assuming *arguendo* that the defendant was able to establish some genuine dispute as to those facts, the trial would be short and nothing the Fifth Circuit might do is likely to abbreviate it significantly, save for a complete and total rejection of the plaintiffs' legal arguments. *Cf. United States v. Bear Marine Servs.*, 696 F.2d 1117, 1120 (5th Cir. 1983). Such an absolute rejection now seems almost inconceivable in light of *Canadian Standards*. That leaves only the time and expense of summary judgment that can surely be avoided through interlocutory appeal. Equally undeniable, however, is that the process of interlocutory appeal would likely take far longer than the time needed for the Court to render a decision on the *Motion for Summary Judgment*. In this regard, Section 1292(b) certification is likely to hinder, not advance, the ultimate termination of this litigation. On this basis alone, the request for certification is properly denied.

## Conclusion

      Given the Court's legal determinations reached in the *Ruling*, it is understandable that the defendant might now seek a new audience in hopes of averting a final judgment on the merits in

---

[37] Rec. Doc. 33-1, at 27.
[38] Rec. Doc. 18, at 3-4.

favor of the plaintiffs. However, a request for Section 1292(b) certification is an exceptional divergence from normal order and should be regarded as such. Whatever his motivation, the defendant has not established that there is substantial ground for disagreement with the *Ruling* nor that interlocutory appeal would materially advance the ultimate termination of this litigation. Accordingly, the defendant's motion should be denied.

                                             Respectfully submitted,

                                             **WELLS & KAPPEL, LLP**

                                             /s/ Timothy Kappel
                                             Timothy R.W. Kappel, LA Bar No. 32881 (Lead Attorney)
                                             1615 Poydras Street, Suite 900
                                             New Orleans, Louisiana 70112
                                             Telephone: (504) 905-2012
                                             Email: tkappel@wellskappel.com

                                             *Counsel for Cyril Vetter and Vetter Communications Corp.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 29, 2024, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be served upon all counsel of record by operation of the Court's electronic filing system.

/s/ Timothy Kappel