UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| **CYRIL VETTER** *and* **VETTER COMMUNICATIONS CORP.** | * * * * * | |
| **VERSUS** | * * * | CIVIL ACTION: 3:23-cv-01369-SDD-EWD |
| **ROBERT RESNIK** *individually and d/b/a* **RESNIK MUSIC GROUP** | * * * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## REPLY MEMORANDUM
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

The plaintiffs, Cyril Vetter and Vetter Communications Corp., by and through the undersigned counsel, respectfully submit this reply memorandum in support of their *Motion for Summary Judgment*.[1] The defendant's opposition to the motion relies entirely on the "reasons and authorities" advanced in his previous filings, specifically the memoranda in support of the *Motion to Dismiss* and the *Motion to Amend Order Pursuant to 28 U.S.C. § 1292(b)*.[2] The Court has previously issued a *Ruling*[3] which considered the legal arguments made in the defendant's *Motion to Dismiss* memoranda and found them to be unpersuasive. As such, this reply primarily responds to the relevant arguments made in the memorandum in support of the *Motion to Amend Order*.

### 1. International Copyright Protection

In its prior *Ruling*, the Court determined that "it is more plausible that protection in member countries is attendant to the U.S. copyright rather than the conclusion that each member country

---

[1] R. Doc. 30. The plaintiffs previously submitted an opposition to the defendant's request for a continuance (R. Doc. 37) which was also styled as a "Reply in Support of Motion for Summary Judgment" (R. Doc. 42). That filing would have been more appropriately styled an "Opposition" to the defendant's request (and the Court treated it as such).
[2] *See* R. Docs. 12-1, 23 (collectively, the "*Motion to Dismiss*"); R. Doc. 33-1 (the "*Motion to Amend Order*")
[3] R. Doc. 28.

1

grants an entirely separate and new copyright by virtue of the Berne Convention."[4] This issue is "largely determinative" of the broader legal issues in this proceeding.[5] As such, it is not surprising that the defendant continues to assert a contrary view. However, the only "new" argument in the *Motion to Amend Order* in support of this lynchpin position is the defendant's citation to Article 5(1) of the Berne Convention.[6] This section provides that "[a]uthors shall enjoy … in countries of the Union other than the country of origin, the rights which their respective laws do now or may hereafter grant to their nationals."[7] From this text, the defendant concludes that the Court's analysis of international copyright protection is incorrect. In his view, Article 5(1) establishes that foreign territories do not "recognize" copyrights from other Berne Convention countries; rather, foreign territory copyrights are individually "granted" by the respective laws of those countries.[8] Yet, on its face, Article 5(1) distinguishes between the rights "granted" by a country *to its nationals* and the rights "enjoyed" by foreign authors. Accordingly, in the plaintiffs' view, Article 5(1) not only fails to support the defendant's argument, it actually provides support for the Court's analysis.[9]

Of course, the Berne Convention is not the law. To the contrary, the United States Congress has stated, in no uncertain terms, that the Copyright Act is the sole source of law as it pertains to copyright protection in this country. *See* 17 U.S.C. § 104(c). In this regard, it bears repeating: there is <u>nothing</u> in the text of the Copyright Act to support the defendant's "multiple" and "separate"

---

[4] R. Doc. 28, at 24.
[5] *Id.* at 23.
[6] R. Doc. 33-1, at 18.
[7] Berne Convention for the Protection of Literary and Artistic Works, Sept. 9, 1886, as revised at Paris on July 24, 1971 and amended in 1979, art. 5(1), *available at* https://www.wipo.int/wipolex/en/text/283698#P109_16834.
[8] R. Doc. 33-1, at 18.
[9] Moreover, as noted by the Court, when contrasted with the text of the Paris Convention on trademarks and patents, it is far more logical to conclude that a copyright is a country-of-origin property interest that "enjoys" the protections of foreign Berne Convention member countries. *See* R. Doc. 28, at 23, 37-38.

2

copyrights theory.[10] Further, numerous Fifth Circuit decisions interpreting the Copyright Act are at odds with the defendant's theory of the case. For example, the Fifth Circuit has recognized that, in the United States, copyright vests in (i.e., originates with) the author at the time of creation of the work. *Rodrigue v. Rodrigue*, 218 F.3d 432, 434 (5th Cir. 2000) (citing 17 U.S.C. § 201(a)).[11] Fifth Circuit precedent also indicates that, following the initial vesting, a United States copyright is "held" as a domestic asset in the United States (as its country of origin) regardless of where an infringement action is pursued. *See Canadian Standards Ass'n. v. P.S. Knight Co., Ltd.*, 112 F.4th 298, 303 (5th Cir. 2024). This precedent is impossible to square with the defendant's supposition that the Song has multiple and separate copyrights that "originated" from the domestic laws of (and are "held" in) every Berne Convention signatory country throughout the world.

By contrast, the plaintiffs' position (previously accepted by the Court in its *Ruling*) is far more consistent with relevant precedent. Specifically, relevant precedent supports the treatment of the Song's copyright as a "form of property" that initially arose in 1966 (the original copyright) and again in 1994 (the renewal copyright) under the laws of the United States. *See Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82, 90 (2d Cir. 1998). In turn, the Song enjoys protection throughout the world, not because there are 180 additional copyrights in the work, but because Berne Convention members are required to "afford foreign copyright holders the same protection as holders of domestic copyrights." *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 52 F.4th 1054, 1078 (9th Cir. 2022). These basic tenets of international copyright

---

[10] The defendant never addresses the Court's contrast between federal statutes governing patent and trademark rights which expressly provide for separate and geographically limited rights and the deafening silence of the Copyright Act on the same issue. *See* R. Doc. 28, at 25.

[11] Under the Copyright Act of 1909, the Song's "federal copyright was secured on the date … of registration." *See* United States Copyright Office, Circular 15A, Duration of Copyright (2024), *available at* https://www.copyright.gov/circs/circ15a.pdf.

protection have been affirmed by courts again and again.[12] Nothing offered by the defendant since the Court issued its *Ruling* truly confronts—much less traverses—this precedent.

### 2. National Treatment Obligations

The defendant continues to insist that acceptance of the plaintiffs' country-of-origin copyright theory would violate national treatment obligations. First, the defendant says the Court must reject the plaintiffs' "theory of international copyright relations [because it] would force the U.S. to discriminate against authors of other Berne nations, by depriving them of statutory termination rights that U.S. authors enjoy."[13] As an initial matter, the prevailing view of national treatment "simply assures that if the law of the country of infringement applies to the scope of substantive copyright protection, that law will be applied uniformly to foreign and domestic authors." *Itar-Tass*, 153 F.3d at 89. Accordingly, it is not at all certain that national treatment obligations are relevant to ownership disputes in the first instance. Moreover, the plaintiffs continue to believe that this issue is not properly before the Court in this action and is, therefore, appropriately reserved for future resolution in a justiciable controversy.[14] Still, the plaintiffs have never taken the position that a ruling in their favor will mean that foreign authors would be stripped of renewal and termination rights in the United States. In fact, the defendant's citation to *Corcovado Music Corp. v. Hollis Music, Inc.*, 981 F.2d 679 (2d Cir. 1993) offers a preview of how

---

[12] *See, e.g., Cong v. Zhao*, 2024 WL 3091187, at *3 (W.D. Wash. 2024) ("In cases where a foreign work is allegedly infringed in the United States, the first element of a copyright claim (whether copyright ownership exists at all) is determined by the law of the country which has the closest relationship to the work."); *Liaigre, Inc. v. Cal. Furniture Collection, Inc.*, 2022 WL 18278600, at *17 (C.D. Cal. 2022) ("[T]he question of who owns a copyright is distinct from what protection that copyright provides."); *Auto. Data Sols., Inc. v. Directed Elecs. Canada, Inc.*, 2018 WL 4742289, at *6 (C.D. Cal. 2018) ("[O]wners of a foreign copyright under the Berne Convention can enforce protections guaranteed under United States copyright law."); *MPD Accessories B.V. v. Urb. Outfitters*, 2014 WL 2440683, at *5 (S.D.N.Y. 2014) ("The Berne Convention Implementation Act allows owners of unregistered foreign copyrights from Berne Convention signatory nations to bring claims of copyright infringement in United States courts."); *Bridgeman Art Libr., Ltd. v. Corel Corp.*, 25 F. Supp. 2d 421, 425 (S.D.N.Y. 1998) ("[A] foreign national [of a Berne Convention member state] may seek copyright protection under the Copyright Act although the source of its rights lies abroad.").
[13] R. Doc. 37, at 5. The plaintiffs' position on the irrelevance of this argument has been previously briefed. *See* R. Doc. 27, at 4-5.
[14] *See* R. Doc. 42, at 3-4.

4

future courts might address these issues. *Corvocado* involved a dispute as to the right to exploit a Brazilian work within the United States. The Second Circuit affirmed the Brazilian author's renewal rights within the United States even though no such rights existed for the work under Brazilian law. The court did so not because of any national treatment obligations, but because "United States renewal copyrights reflect a vital policy of United States copyright law." *Id.* at 685. That policy—to provide authors a second opportunity to obtain remuneration for their works—is equally reflected in the Copyright Act's termination provisions.[15] Accordingly, there is no obvious basis to conclude that a judgment for the plaintiffs here will impair the future recognition of renewal and termination rights for foreign authors in the United States.

Second, the defendant claims that a decision for the plaintiffs in this action would "grant U.S. authors greater rights in foreign countries than the native authors of those countries are entitled to receive under their own domestic laws."[16] This argument misconstrues the current cause of action and the facts that gave rise thereto. Specifically, it ignores that the ownership dispute the Court has been asked to resolve is between citizens of the United States, involves title to a domestic property asset, and is predicated on the defendant's assertion of rights from *within the United States*. The defendant's speculation continues to reflect an overly broad view of what constitutes "extraterritorial" application of the Copyright Act—one that was rejected by the Court with support from the Supreme Court's decision in *Kirtsaeng v. John Wiley & Sons, Inc.*, 568 U.S. 519 (2013).[17] In reality, the defendant has not provided any precedent to suggest that judgment in favor of the plaintiffs would in any way violate the natural, ordinary limits of the Court's jurisdiction.

---

[15] *See* H.R. Rep. No. 94-1476, at 124 (1976), *available at* 1976 WL 14045.
[16] R. Doc. 33-1, at 20.
[17] *See* R. Doc. 28, at 32.

### 3. The Renewal Copyright Interest

As the Court previously recognized, if the defendant's "multiple" and "separate" copyrights theory fails, his related theory concerning the renewal copyright in the Song—that foreign rights assigned by Mr. Smith in 1963 to Windsong were "noncontingent" and "vested"— likewise fails.[18] The Court also determined that the Supreme Court's decision in *Stewart v. Abend*, 495 U.S. 207 (1990) supports the view that Mr. Smith's heirs took ownership of the renewal copyright, as a new property interest, free of any claim founded upon assignment of the original copyright to Windsong.[19] Although the defendant's memorandum in support of the *Motion to Amend Order* nominally challenges the Court's determinations regarding renewal rights,[20] there is nothing in that brief that articulates a true rejoinder to those determinations. In fact, there is no mention of *Stewart* at all. The plaintiffs submit that the legal determinations in the *Ruling* are correct and, as applied against the undisputed material facts of this case,[21] those determinations warrant summary judgment in favor of the plaintiffs on Count One of the *Complaint*.

### 4. The Recaptured Copyright Interest

With respect to termination rights, the overwhelming majority of the defendant's memorandum in support of the *Motion to Amend Order* merely reprises his prior arguments made in connection with the *Motion to Dismiss*. Of course, those arguments previously failed to persuade the Court.[22] Notably, the defendant does not identify any intervening changes in the facts or law which would call the Court's determinations in the *Ruling* into legitimate question. The only "new" argument in the defendant's memorandum that warrants a response is the defendant's citation to a

---

[18] R. Doc. 28, at 25.
[19] *Id.* at 18, 24.
[20] R. Doc. 33-1, at 14-16, 19-20.
[21] *See* R. Doc. 32-4 and R. Doc. 48-1.
[22] R. Doc. 28, at 27-39.

6

number of cases involving federal subject matter jurisdiction, including the Second Circuit's opinion in *T.B. Harms Co. v. Eliscu,* 339 F.2d 823 (2d Cir. 1964).

The Fifth Circuit has cited *T.B. Harms* for the proposition that "an action 'arises under' the Copyright Act if and only if the complaint is for a remedy expressly granted by the Act, asserts a claim requiring constructing of the Act, or, at the very least and perhaps more doubtfully, presents a case where a distinctive policy of the Act requires that federal principles control the disposition of the claim." *Goodman v. Lee*, 815 F.2d 1030, 1031 (5th Cir. 1987) (cleaned up). Putting aside whether precedent interpreting "civil action[s] arising under" the Copyright Act for purposes of 28 U.S.C. § 1338 is particularly relevant to the meaning of "rights arising under this title" in 17 U.S.C. § 304(c)(6)(E), there is nothing in *T.B. Harms* or its progeny that would preclude the Court's determination that both domestic and foreign rights to exploit the Song "arose" (i.e., "originated") from the Copyright Act.[23] Quite the contrary. It is beyond dispute that the ownership of rights claims presented in this action "require construction" of the Copyright Act. Likewise, the ownership claims involve "distinctive policies" of the Copyright Act—renewals and reversions—such that federal principles should control the disposition thereof.[24] Accordingly, contrary to the defendant's suggestion, nothing in *T.B. Harms* or *Goodman* casts doubt on the conclusions reached in the *Ruling*. Together with the undisputed material facts hereof, those conclusions warrant summary judgment in favor of the plaintiffs on Count Two of the *Complaint*.

\* \* \* \*

---

[23] R. Doc. 28, at 36-37.

[24] The defendant quotes a passage of the *T.B. Harms* decision out of context to suggest that the "distinctive policy" option is off the table for the plaintiffs. R. Doc. 33-1, at 24, n.16. There can be no serious debate that copyright ownership claims can and frequently do "arise under" the Copyright Act for jurisdictional purposes. *Goodman* itself involved an ownership dispute. *See Goodman*, 815 F.2d at 1031–32. Properly understood, the *T.B. Harms* jurisdictional test only excludes claims where the disputed copyright ownership hinges *solely* on the terms of a contractual agreement. *See Ross v. Dejarnetti*, 2020 WL 1889195, at \*5 (E.D. La. 2020).

The legal issues presented by the *Motion for Summary Judgement* have already been analyzed in depth by the Court in its prior *Ruling*. In the plaintiffs' view, nothing the defendant has offered by way of legal argument since the *Ruling* should alter the well-reasoned conclusions therein. Accordingly, and for all the reasons previously submitted,[25] the plaintiffs respectfully request that the Court grant the *Motion for Summary Judgment*.

>Respectfully submitted,
>
>**WELLS & KAPPEL, LLP**
>
>/s/ Timothy Kappel
>Timothy R.W. Kappel, LA Bar No. 32881 (Lead Attorney)
>1615 Poydras Street, Suite 900
>New Orleans, Louisiana 70112
>Telephone: (504) 905-2012
>Email: tkappel@wellskappel.com
>
>*Counsel for Cyril Vetter and Vetter Communications Corp.*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 30, 2024, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be served upon all counsel of record by operation of the Court's electronic filing system.

>/s/ Timothy Kappel

---

[25] *See* R. Docs. 17, 27, 30, 35, 42. The plaintiffs also wish to incorporate their prior clarification concerning the Prayer for Relief in the *Complaint* and their revision regarding injunctive relief. *See* R. Doc. 42, at 5-6.